UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LYUBOV PARYGINA,
          Plaintiff,

v.

DEVITT ELEVERSON, in his individual
and official capacities; ELLEN NUDELMAN,
in her individual capacity, Joel KESTENBAUM,
in his individual capacity and NINA SIROTA, in
her individual capacity, JULIA PAVLOV-
RACHOV, in her individual capacity.
          Defendants.

Demand for Jury Trial
------------------------------------------------------------X

## COMPLAINT

Plaintiff, by and through her attorney, James B. LeBow, Esq., complains of the of the Defendants as follows:

### I. PRELIMINARY STATEMENT

Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, 1985 (3) and 1988, to redress those deprivations Plaintiff's liberty and restrictions imposed upon her constitutional rights, all of which occurred when Defendants unlawfully and with deliberate indifference confined Plaintiff to the Psychiatric Unit of Coney Island Hospital, without probable cause or other justification, all under collar of state law.

The unlawful confinement of Plaintiff by Defendants, and each of them, individually and part of a conspiracy, violated the First, Fourth and Fourteenth Amendments, U.S. Constitution, and New York State Mental Hygiene Code.

Further, while confined, Defendants forced, coerced and manipulated Plaintiff to suffer the administration of psychotropic medication which was inappropriate and unnecessary for any

1

symptoms she displayed, and as such, constituted punishment and retaliation for exercising her constitutional rights.

Defendants, and each of them acted both individually, and as part of a conspiracy with others, both known and unknown, deliberate indifference towards Plaintiff's rights under the laws and Constitution of the United States, and the State of New York, and are liable herein, as policy-makers, supervisors, and individually.

Plaintiff seeks to recover both compensatory and punitive damages for her confinement which lasted more than sixty (60) days.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter, pursuant to 28 U.S.C. §§ 1331(a) and 1343 (3). Venue is proper in the Eastern District of New York, as the acts complained of were committed by defendants in said district.

## III. PARTIES

2. Plaintiff Lyubov Parygina, immigrated to this country from the Soviet Union, and presently resides in Brighton Beach, Brooklyn, County of Kings, State of New York. Plaintiff speaks very little English, is not fluent, and is unable to clearly express herself in English.

3. Coney Island Hospital is located at 2601 Ocean Parkway, Brooklyn, County of Kings, New York, and is owned, operated and controlled by the New York City Health and Hospital Corporation, a public authority corporation, formed and operating under Article 28 of the New York Public Authority Law.

4. The psychiatric unit houses involuntarily committed patients on a locked ward. Those involuntarily committed suffer a deprivation of their rights, or at least a severe restriction, including the following: (a) a deprivation of the Fourth Amendment rights against unreasonable

search and seizure by the detention and definite confinement, upon the opinion of two (2) psychiatrists that the patient is a danger to themselves or others; (b) the First Amendment rights of association and speech; and (c) those rights under the Fourteenth Amendment, including the right to be free from the imposition of punishment, the right to equal protection under state law, rights to due process of law, as well as right to privacy; the deprivation of which could be justified only upon compliance with the New York Mental Hygiene Law, which, as a threshold, requires an individual to be found to be a danger to himself or others.

5. Defendant Devitt Eleverson, at all times relevant herein, is a medical doctor and a director of the Psychiatric Unit at Coney Island Hospital. As such, he is the final policy-maker regarding all aspects of patient care, treatment and involuntary commitment; and, he also has supervisory responsibility for treatment and care provided by all staff, with attendant responsibility for training, discipline and retention of staff. Defendant Eleverson also had personally evaluated and examined Plaintiff herein, and consulted with her treating physician on the issue whether Plaintiff had been properly confined, all under collar of state law.

6. Defendant Ellen Nudelman, at all times relevant herein, is a medical doctor employed by Coney Island Hospital, to examine, treat and care for patients diagnosed with a mental disorder, disease or illness and specifically examines those patients who may be involuntarily committed as a danger to themselves or others. Dr. Nudelman personally examined Plaintiff, and made specific findings leading to Plaintiff's unlawful confinement; all, while acting under the collar of state law.

7. Defendant Nina Sirota, at all times relevant herein, was a psychotherapist at Coney Island Hospital, and acted as Plaintiff's primary therapist. Defendant Sirota is sued in her individual capacity, and in all times acted under the collar of state law.

8. Defendant Pavlov-Rachov, at all times relevant herein, was a physician, practicing in the area of psychiatry and employed by Coney Island Hospital to render treatment and care to those patients admitted to the Psychiatric Ward; Defendant Pavlov-Rachov examined Plaintiff on September 15, 2005, for the specific purpose of sustaining her involuntary commitment, acted under the collar of state law.

9. Defendant Joel Kastenbaum, at all times relevant herein, was a medical doctor employed by Coney Island Hospital. Defendant was, at all times relevant herein, Plaintiff's primary treating physician. Defendant took a number of actions and rendered a number of opinions regarding Plaintiff's involuntary commitment; and at all times, he was acting under collar of state law; he is sued herein, in his individual capacity.

## IV. FACTS

10. That on or about September 2, 2005, Plaintiff was taken to the Coney Island Hospital Emergency Room, by NYPD officers, after having made a report of suspicious activity, and being unable to explain to NYPD officers, upon their arrival; Plaintiff speaks very little English.

11. At the Psychiatric Emergency Room, Plaintiff was examined by Dr. Rampali, an independent contractor, and not on the hospital staff, who did not find Plaintiff to be a danger to herself or others, and therefore, was not a proper subject for an involuntary commitment, and any other admission without Plaintiff's consent; and was ready to discharge Plaintiff.

12. However, before Plaintiff could be discharged, a second examination was performed, this time by a member of the psychiatric staff, Dr. Ellen Nudelman, and thereafter, Plaintiff was found her to be a danger to herself and others, and Plaintiff was ordered to be admitted on an involuntary basis to the locked unit at Coney Island Hospital, on a 48-hour hold.

13. More than 48 hours later, on or about September 4, 2005, Plaintiff was examined again, this time, by Defendant Joel Kestenbaum, who would eventually become Plaintiff's treating or primary physician during her hospitalization; and, notwithstanding Dr. Nudelman's findings, Dr. Kestenbaum found, upon his examination, that Plaintiff was not of a condition to present a danger to herself or others, and therefore, from that examination forward, there was no lawful basis existing upon which to involuntarily confine Plaintiff at the psychiatric unit, and Plaintiff should have been discharged at that time, or at least, upon demand.

14. Over the next 14 days, Plaintiff made numerous requests to be discharged, her request, however, were denied.

15. On or about September 13, 2005, on information and belief, an attorney from the Health and Hospital Corporation's attorney, reviewed Plaintiff's file and ascertained that Defendants have been illegally confining Plaintiff since on or about September 4, 2005, the date when Dr. Kestenbaum found her not to be a danger to herself or others.

16. On or about September 14, 2005, Defendant Elverson, as chief of staff of the psychiatric department, was notified of the error in Plaintiff's status; Defendant Elverson, in turn, caused Defendant Kestenbaum to re-examine Plaintiff and changed his prior noted opinion as to whether Plaintiff was a danger to herself or others.

17. On or about September 15, 2005, Defendant Elverson, also spoke with and prevailed upon Defendant Pavlov-Rachov, a staff physician, to also examine Plaintiff. Thereafter, Defendant Pavlov-Rachov did examine Plaintiff and found her to be a danger to herself and others; however, Defendant Pavlov-Rachov, being unfamiliar with Plaintiff's medical chart, condition, and also interviewing Plaintiff without an interpreter, could not even state Plaintiff's proper circumstances predicating her hospitalization; and, therefore, Defendant's

opinion was legally null and void and should not have been used as a basis to involuntary commit Plaintiff to the psychiatric unit.

18.  From that time, on or about September 15, 2005, all treatment, care and confinement, prescribed and rendered to Plaintiff by Defendants was for the sole purpose of justifying her further unlawful confinement, and to pose punishment as retaliation for Plaintiff's exercising her legal right to obtain an attorney, seek due process and her release from the psychiatric ward.

20.  That Plaintiff's involuntary confinement, in violation of her rights, Defendants, and each of them, who individually and as part of a conspiracy, acted with deliberate indifference with the foregoing conclusion that their examinations, assessments and conclusions all support the finding that Plaintiff suffered from a mental illness and was dangerous to herself and others, for the sole purpose of confining her to the psychiatric unit of Coney Island Hospital; and, to that end, administered psychotropic medication to Plaintiff, was inappropriate and unnecessary under the circumstances, but with known serious side-effects, also at Plaintiff's detriment; and in denying Plaintiff the ability to communicate and associate with others outside of the hospital, for denying her the right to leave the unit, even supervised to go outside of the hospital, under any circumstances; all, violating clearly an established federal law; and further, the result of Defendant Elverson's supervision and training of members of the psychiatric unit medical staff.

21.  That as a direct, sole and proximate result of the deliberately indifferent acts of Defendants, and each of them, under collar of state law, Plaintiff was caused to and did sustain and suffer serious emotional and mental distress, humiliation and embarrassment; and, was deprived of personal integrity, her ability to associate with others, as well as a loss of personal

income, and to incur medical expenses, as well as undergo the forced administration of psychotropic medication, which was inappropriate and unnecessary to her condition, which produced injurious side effects, including, as follows: induced lactation, mental confusion, sedation, dizziness and inability to concentrate, all in violation of the First, Fourth and Fourteenth Amendments of the Constitution of the United States and the laws and constitution of the State of New York.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Violation of 42 U.S.C.§1985)

22. Plaintiff repeats and re-alleges Pars. 1-22 of her Complaint and further states and alleges:

23. That on or about September 13, 2005, the Health and Hospital Corporation, as well as Coney Island Hospital Administration and Defendant Elverson, Director of the Psychiatric Unit, all became aware that Plaintiff's status, as found by her treating physician on September 14, 2005, did not justify her seizure, detention or involuntary commitment, all of which commenced on September 2, 2005; and, Plaintiff was being detained, held and imprisoned unlawfully and without legal justification, in violation of state law, specifically the Mental Hygiene Law; and, thereafter, Defendant enlisted, organized and joined with Defendants Kastenbaum, Pavlov-Rachov and Sirota to conspire to cover-up Plaintiff's illegal detention and as such, engaged in over-actions, as follows: documenting false and inaccurate observations of Plaintiff to indicate she was a danger to herself and others, as well as falsifying data and manufacturing false observations, interviews, testing and analysis results, so as to appear Plaintiff had been lawfully seized, detained, confined and imprisoned, specifically, as follows:

    a.    that on or about September 14, 2005, Defendant Elverson, requested, tacitly coerced Defendant Kestenbaum to re-evaluate and change his opinion of Plaintiff's condition, finding her to be a danger to herself and others; and,

    b.    that on or about September 15, 2005, Defendant Elverson again, had another psych department physician, Defendant Pavlov-Rachov examine Plaintiff. In performing this examination defendant was without adequate information and examined plaintiff for the sole purpose of corroborating Defendant Kestenbaum's finding of dangerousness, and to meet the statutory requirements for an involuntary commitment. Also, then and there, defendant Elverson enlisted the aid and action of Defendants Sirota and Kestenbaum to manufacture and compile false data, including test results, findings and observations to place within Plaintiff's medical chart, to provide the appearance that Plaintiff was a danger to herself and others, in need of confinement in a locked psychiatric ward.

24.    These actions taken in furtherance of the conspiracy directly and proximately caused Plaintiff to be unlawfully seized, detained and confined; as well as to suffer the forcible administration and/or ingestion of psychotropic medication, and resulting injurious and detrimental side effects, and to deprive plaintiff of her rights under the First, Fourth and Fourteenth Amdts, U.S. Const., by unlawfully and unreasonably detaining, confining and depriving her of her liberty, denying her the right to associate with others outside of the hospital, and further, by denying plaintiff her rights under the laws and constitution of the State of New York.

WHEREFORE, Plaintiff request the Court to enter judgment in plaintiff's favor and against Defendants, and each of them, severally, as to the foregoing causes of action as follows:

    1.) On the First Cause of Action brought under 42 USC §1983, to redress

defendants repeated and continuing violations of plaintiff's constitutional rights, plaintiff demands judgment in amount of 2,500,000.00 compensatory damages, and punitive damages in the amount of $5,000,000;

2.) On the Second Cause of Action under 42 USC §1985 for engaging in a conspiracy to violate plaintiff's rights under State law, plaintiff demands judgment in the amount of $2,500,000.00, compensatory damages and punitive damages in the amount of $5,000.000.00; and,

3.) Pursuant to §1988 plaintiff demands attorney's fees, cost, disbursements and interest, for such other and further relief as the court deems just and proper.

New York, New York,
December 20, 2005

Respectfully submitted,

_____
James B. LeBow (JL4535)
Attorney for the Plaintiff
Lyubov Parygina
350 Fifth Avenue, Suite 4710
New York, NY 10118
(212) 868 3311